MAXWELL (MANHATTAN GASLIGHT CO. v.). See Case No. 9,023.

MAXWELL (MASSETT v.). See Case No. 9,261.

MAXWELL (MORRIS v.). See Case No. 9,834.

MAXWELL (MUNSELL v.). See Case No. 9,932.

MAXWELL (OGDEN v.). See Case No. 10,458.

MAXWELL (PIERSON v.). See Case No. 11,159.

MAXWELL (PONSOT v.). See Case No. 11,267.

---

## Case No. 9,324.

### MAXWELL v. The POWELL.

[1 Woods, 99.] [1]

Circuit Court, D. Louisiana. Nov. Term, 1870.

CARRIERS — FAILURE TO DELIVER GOODS — CONNECTING LINES—OFFSET OF FREIGHT—SHIPPING —GENERAL CREDITOR—COMMON LAW ACTION— MARITIME LIENS.

1. It is no reason way a libellant should not recover for the failure of the defendant to deliver goods according to contract, that no credit is given for the freight earned by defendant in carrying other goods. Such claim should be set up by cross libel.

2. Goods were shipped at New Orleans on the Caddo for Jefferson, Texas, and a through bill of lading given. At Shreveport the trip of the Caddo terminated, and all the goods with the bill of lading were transferred to the Powell. She delivered a part of the goods and demanded freight from the owner. In a suit to recover the value of a portion of the goods which was not delivered by the Powell, held, that she was liable for the goods lost and could not turn the libellant over to the Caddo for his remedy.

3. A general creditor of a ship has no lien on the vessel.

4. When she is attached by process from a common law court, nothing is or can be seized but the interest of the owner remaining after the maritime liens are satisfied.

5. A sale under such seizure conveys only the title of the owners subject to the maritime liens.

6. The fact that the proceeds of the sale were absorbed in the payment of certain preferred maritime liens, and were not sufficient to pay them in full, so that the attaching creditors received nothing, does not relieve the vessel from other maritime liens. A common law court is without power to divest maritime liens except by payment.

[Cited in Crosby v. The Lillie, 40 Fed. 368.]

[Appeal from the district court of the United States for the district of Louisiana.]

In admiralty.

Wm. M. Randolph, for libellant.

Gustavus Schmidt, for claimant.

WOODS, Circuit Judge. The libellant claims to recover the sum of three hundred and twenty-five dollars and seventeen cents, by reason of the failure of defendant to deliver goods of that value, the property of libellant, which the defendant received at Shreveport, Louisiana, and undertook to transport to Jefferson, Texas. One Nicholas Quizzaro, claimant, intervenes and defends upon the following grounds: 1. Because the libellant has failed to establish his demand by proof. 2. Because he refuses to do justice by giving credit for the freight earned by the steamer in transporting the goods of libellant. 3. Because libellant should have proceeded against the steamer Caddo, with which the contract of affreightment was made, and by whose master the bill of lading was signed. 4. Because the claimant purchased the steamer Powell at a judicial sale made by order of the 4th district court of the parish of Orleans, in the state of Louisiana, in an action of foreign attachment against the owners. 5. Because the proceeds of said judicial sale were absorbed by the claims of privileged creditors, so that the attaching creditors received nothing, and if libellant had intervened in the case he would have received nothing. 6. And, finally, because the libellant has slept upon his claim and is not entitled to the aid of this court.

Of these defenses in their order:

(1) I am satisfied, from a careful scrutiny of the testimony, that the claim of libellant is established. The captain of the Powell admitted in substance the receipt of the goods for carriage from Shreveport to Jefferson. He admitted the failure to deliver the goods at Jefferson; promised to bring them up on his next trip and failed to do so. He agreed to pay their value, and said he had paid it to Phelps & Co., correspondents of libellant in Shreveport, which was false. The value of the goods is sufficiently established by the testimony of libellant and of his clerk.

(2) If the defendant has any claim against libellant for freight it should have been set

---

1 [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

up by cross libel, and the failure of defendant or claimant to do this cannot be alleged as a reason why libellant should not recover.

(3) It appears from the evidence that the goods of libellant were shipped at New Orleans on board the steamer Caddo, and a through bill of lading given by the Caddo. At Shreveport the trip of the Caddo terminated, and the goods with the bill of lading were transferred to the Thomas Powell. She carried the larger part of the goods to Jefferson, but failed to deliver the portion sued for in this action. Her master presented the bill of lading issued by the Caddo and demanded freight of the libellant. In undertaking to carry the goods from Shreveport to Jefferson, under the Caddo's bill of lading, she assumed the duties and responsibilities of a common carrier, and after delivering a portion of the goods and demanding freight, it is too late for her to claim exemption from liability and to turn the libellant over to the Caddo for his remedy.

(4) The main and interesting question in the case is, whether the sale of the Powell, in a proceeding by foreign attachment in the state court of Louisiana, divests the lien of the libellant?

The record of the state court, which has been submitted to us, shows that the suit in attachment was brought by the plaintiffs in attachment to recover the amount of a debt due generally from the owners of the Powell to the plaintiff; that the owners were nonresidents of the state of Louisiana, but that they had property, to-wit, the steamer Thomas Powell, situate in the parish of Orleans in said state. The steamer was seized by virtue of the writ of attachment, and was sold. Certain seamen and material men intervened, and their claims exceeded the amount for which the steamer sold. A general creditor of a shipowner has no lien on the vessel. When she is attached by process from a common law court, nothing is taken or can be taken, but the interest of the owner remaining after the maritime liens are satisfied. The seizure does not reach them. The thing taken is not the whole interest in the ship, and the only interest which this process can seize is a secondary and subordinate interest, subject to superior and paramount claims of lien holders. Under the attachment process from the state court, nothing was legally in the custody of the sheriff but the interest of the owner, whatever it might prove to be after the liens were adjusted. The common law process was not a proceeding in rem to charge the vessel with the debt, for the creditor had no lien upon her, and the court no jurisdiction over anything but the owner's residuum. The whole ship could not be sold so as to convey an absolute right of property to the purchaser.

The constitution and laws of the United States confer the entire admiralty and maritime jurisdiction expressly upon the national courts, and admiralty and maritime liens are therefore outside of the line which marks the authority of a common law court of a state and excluded from its jurisdiction. And if a common law court sells the vessel to which the lien has attached upon condemnation to pay the debt, or on account of its perishable condition, it must sell subject to the maritime liens, and they will adhere to the vessel in the hands of the purchaser and of those claiming under him. Certain Logs of Mahogany [Case No. 2,559]; Poland v. The Spartan [Id. 11,246]; The Bolivar [Id. 1,610]. While, therefore, we hold that the judicial sale by order of the state court conveyed the title of the owners to the purchasers, it did not divest the maritime liens, but the purchaser took subject to those liens. The defense, that the proceeds of the vessel under the sale in the state court, were not sufficient to pay preferred liens, it seems to me is not tenable. Non constat, that the vessel would have brought sufficient to pay all liens, if sold by an order of a court of admiralty, by which the title to the steamer itself would have been conveyed. The purchase price at the sheriff's sale may have been insufficient to pay the claims of intervening lien holders because the purchaser knew that he was not receiving an unincumbered title.

It only remains to consider whether the libellant has lost his lien by delay. An examination of the testimony satisfies me that he has been quite vigilant in the assertion of his claim. It is not pretended that he had any actual notice of the proceedings in the state court. He endeavored to have the Powell seized both at Jefferson, Texas, and at Shreveport, and failing in these attempts, he, without unreasonable delay, commenced this proceeding. I am of opinion, therefore, that there should be a decree in favor of libellant against the Thomas Powell for the value of the goods not delivered. Decree accordingly.

[See Case No. 1,573.]

MAXWELL (REYNOLDS v.). See Case No. 11,731.

MAXWELL (RHEIMER v.). See Case No. 11,738.

MAXWELL (RICH v.). See Case No. 11,759.

MAXWELL (RILEY v.). See Case No. 11,838.

MAXWELL (ROCKVILLE & WASHINGTON TURNPIKE ROAD v.). See Case No. 11,985.

MAXWELL (ROLLER v.). See Case No. 12,025.

MAXWELL (ROOSEVELT v.). See Case No. 12,034.

MAXWELL (SADLER v.). See Case No. 12,207.

MAXWELL (SCHMAIRE v.). See Case No. 12,460.